## PRITCHARD v. W. T. RAWLEIGH COMPANY.

### Opinion delivered June 2, 1924.

1. GUARANTY—VALIDITY OF CONTRACT.—Where, in a contract employing an agent· to sell medicines and extracts upon which defendants became guarantors, there was nothing contemplating that the principal would ship or that the agent would ‘receive or sell articles manufactured or shipped in violation of law, in a suit on the guaranty the fact that the principal shipped misbranded goods would not render the guaranty contract void, though the agent had the right to return such goods.

2. GUARANTY—DEFENSES.—In an action on a guaranty of the contract of a selling agent, the defense that the contract allowed the return of unsold goods, and that plaintiff should have allowed credit for goods returned or tendered by the agent, was concluded by the judgment in a suit against the agent.

3. GUARANTY—SUFFICIENCY OF ANSWER.—In an action on a guaranty of the contract of a selling agent, an answer denying that the guarantors were bound by a judgment against the administrator of the estate of the agent because his estate was insolvent and the administrator was indifferent whether judgment was rendered against the estate, *held* insufficient to charge fraud or collusion in procurement of the judgment.

4. GUARANTY—CONCLUSIVENESS OF JUDGMENT AGAINST PRINCIPAL.—Where guarantors agree to be bound by any judgment against their principal, they are precluded from raising defenses which might have been available to the. principal.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*Carmichael & Hendricks,* for appellant.

The answer stated a good defense. It alleged that the goods sold to Ott were misbranded and violated the act of Congress of June 30, 1906. The demurrer admitted this allegation. The contract was therefore void, as the goods were not salable by law. Sec. 8335 Barnes Federal Code of 1919A; 91 Ark. 69. Appellants are not cut off by the contract from the introduction of proof to show the truth of the transaction. See Stearns on Suretyship (3rd. ed.) p. 300, §§ 175-176. While a judgment against a principal is *prima facie* evidence against the surety, such judgment may be set aside by

showing fraud or collusion. 89 Ark. 384; 10 Metc. 301. The effect of the allegations of the answer is to charge collusion, and the judgment against the principal is of no binding effect. Black on Judgment, vol. II, §§ 186, 592; Spencer on Suretyship, § 254, p. 356, 40 L. R. A. (N. S.) 698; 12 R. C. L. § 51, p. 1096.

*Sherrill & Mallory,* for appellee.

When one binds himself by contract to be bound by the judgment against his principal, a judgment against the principal is conclusive against the surety. 53 Ark. 330; 52 L. R. A. 312; 14 Cal. 202; 51 Minn. 474; 86 Iowa 136; 86 Ill. 236.

SMITH, J. This is a continuation of the case reported in 151 Ark. 390. It is a suit by a foreign corporation engaged in selling goods and merchandise, and the complaint filed by it alleged that on January 5, 1915, it entered into a written contract with A. S. Ott for the sale of merchandise to him, and, at the time of the execution of this contract, A. L. Pritchard and W. L. Davis joined therein for the purpose of becoming guarantors of Ott for the payment of all amounts due thereunder. The sureties pleaded the statute of limitations in bar of the plaintiff's right to recover against them, and the court sustained the plea and rendered judgment in their favor, but judgment was rendered in favor of the plaintiff against the estate of Ott, and no appeal was prosecuted from that judgment. But we held that the cause of action was not barred against the sureties, and that the court had erred in so holding, and the cause was remanded for a new trial.

Upon the remand the sureties filed an answer which contained the following allegations: They admitted the execution of the contract sued on, but denied they were indebted to the company in any sum. They alleged that the goods sold Ott were manufactured and sold in violation of the Federal Pure Food and Drugs Act, and that medicines sold were misbranded and wrongly labeled, in violation of law. That the plaintiff had pleaded guilty to a charge of violating the law in misbranding and

wrongly labeling the same character and class of medicines and articles that had been sold to Ott, and that plaintiff had pleaded guilty during the period of time it was selling goods to Ott, and had in fact violated the law in selling the very articles to Ott covered by the account sued on.

It was further alleged that, at the time of Ott's death, he had in his possession a considerable quantity of the goods, which he and these sureties had the right to return to the plaintiff and have credit allowed therefor, but the plaintiff failed and neglected to take the goods back, although requested so to do. It was also alleged that Ott's estate was insolvent, and his administrator was indifferent whether a judgment was rendered against the estate or not, and the sureties denied they were bound by the judgment which had been rendered against Ott's administrator.

The plaintiff demurred to this answer, and the demurrer was sustained, and, as defendants stood on their answer, judgment was rendered against them for the amount of the judgment against Ott and the interest which had since accrued. This appeal is from that judgment.

The agency contract upon which the sureties became guarantors contemplated that Ott should retail certain medicines, extracts and other products manufactured by the plaintiff. There is nothing about the contract itself which is alleged to be in violation of the law. There is nothing in the contract which contemplates that the plaintiff would ship or that the agent would be expected to receive and sell any article manufactured or shipped in violation of law. Had any such articles been shipped as is alleged in the answer were shipped, Ott had the right to return them, and the right undoubtedly existed to defend upon the ground that articles had been shipped in violation of law, if such was the case. The plaintiff may, as alleged in the answer, have shipped misbranded goods, but this did not render the agency contract void, as it contemplated no such action on the part of the plaintiff.

The contract did authorize the return of unsold goods, and plaintiff should have allowed credit for such goods as were returned or properly tendered; but this was also a matter of defense which should have been litigated in the suit against Ott, if goods were shipped which Ott was not required to receive, or, if goods were tendered in return which the plaintiff should have accepted, these were matters of defense which should have been litigated in the proceeding from which the appeal in 151 Ark., *supra,* came.

There is no allegation of fraud or collusion in the answer of the sureties in the procurement of the judgment against Ott's estate. There is an allegation of insolvency and of indifference, but this does not charge fraud in the procurement of the judgment. On the contrary, the sureties were advised of this suit, and were parties to it, and the pleading filed by them was not an answer setting up these defenses, but a plea of the statute of limitations in bar of the suit against them. The court sustained this plea as to the sureties, but rendered judgment against the estate of the principal in the contract.

Attached to the agency contract, as a part of it, is the following obligation, which was signed by Pritchard and Davis: "For and in consideration of the extension of further time to the above named second party (Ott) in which to pay his account for goods previously bought by him from the company, and in further consideration of the W. T. Rawleigh Medical Company extending further credit to said second party, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Medical Company, unconditionally, first, the payment in full of the balance due said company on account, as shown by its books at the date of the acceptance of this contract, and second, the full and complete payment due said company of any and all indebtedness incurred under the terms of the above and foregoing instrument by the second party named as such therein, to which terms and conditions we fully assent, waiving acceptance of this contract of guaranty and all notice,

and agree that the written acknowledgment by said second party of the amount due on his account, or that any judgment rendered against him for moneys due the company shall in every and all respects bind and be conclusive against the undersigned. And we further agree that, in any suit brought on this contract of guaranty by the company, no other or further proof shall be required of it than to establish the amount or sums of money due and owing to it from the said second party, and, when so proved, shall be conclusive and binding upon us, and that any extension of time shall not release us from liability under the contract of guaranty."

It is obvious, from a consideration of the facts recited above, that the question in the case is the effect to be given this obligation. Are the sureties precluded from setting up in their answer the matters of defense there alleged? We think they are, for such appears to be the condition of the obligation which they signed.

In *Robinson* v. *Baskins*, 53 Ark. 330, the court said: "Mr. Freeman in his work on Judgments (§ 184) says: 'Covenants to indemnify against the consequences of a suit are of two classes. 1. Where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide by the result; and 2, where the covenant is one of general indemnity, merely, against claims or suits. In cases of the first class the judgment is conclusive evidence against the indemnitor, although he was not a party, and had no notice; for its recovery is the event against which he covenanted. In those of the second class, the judgment is *prima facie* evidence only against the indemnitor, and he may be let in to show that the principal had a good defense to the claim.' The indemnitor can in either class show collusion for the purpose of charging him."

There are a vast number of cases on this subject, but it would be without profit to review them.

The annotator's note to the case of *Ballantine & Sons* v. *Fenn*, 40 L. R. A. (N. S.), extending from page 698 to page 749, collects many of them. The annotator makes

the following summary of the cases: "The decisions seem to be in great conflict as to the evidential value of a judgment against the principal in an action against his surety. It is not always possible to tell what the language of the obligation involved in the particular suit is, and, without this, it cannot be said how far two cases may be out of harmony. The wording of the instrument is everything in this class of cases. There is nothing to prevent a surety from contracting to be bound by a judgment against his principal, if he choose, and, if that is the fair import of his agreement, he will be concluded by such a judgment. It is simply a case of what the surety has said he will do. In an ordinary contract of indemnity, the surety is brought in by notice."

A number of other annotated cases are cited in the notes to § 129 of the article on Principal and Surety in 21 R. C. L. 1088, and we quote from that section the following statement of the law: "Moreover where, from the nature, purpose and wording of the bond, it appears that the surety has contracted in reference to the conduct of one of the parties in some proceeding in the courts, as that he shall pay a particular judgment, or shall pay the costs, or has agreed to answer for the principal in respect to some charge which the law lays on him, or has otherwise agreed to abide the decree or judgment of a court against the principal, it has been held that the recovery of the judgment is in itself the happening of the contingency on which the surety was to become bound, and that consequently, in the absence of fraud or collusion, the judgment is conclusive proof not only of the breach of the bond but of the quantity of the damage resulting therefrom, and this even though the surety had no notice of the suit. There is no reason why parties should not be allowed to obligate themselves to abide by the result of a suit between others; and, if the contract * * * can be fairly construed as imposing such an obligation, there is no hardship in enforcing it. Such an obligation does not arise out of the mere relation of principal and surety, but springs from the express stipulations of the agreement."

We are of opinion that the language of the obligation signed by the sureties bound them to pay any judgment rendered without fraud or collusion against their principal, and, as there is no allegation here of fraud or collusion, the demurrer to the answer was properly sustained, and the judgment of the court below is accordingly affirmed.